IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RHONDA S. ZIMMERMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-1247-CV-W-ODS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### ORDER AND OPINION AFFIRMING
### COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability benefits. The Commissioner's decision is affirmed.

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

The ALJ found Plaintiff suffered from the severe impairments of degenerative disc and joint disease in her lumbar region, degenerative joint disease in her knees, and fibromyalgia. R. at 13. He concluded Plaintiff's depression and anxiety provided no more than minimal limitations on her ability to work, but he nonetheless considered

those conditions in ascertaining Plaintiff's residual functional capacity ("RFC"). R. at 13, 18-20. The ALJ found Plaintiff retained the RFC to perform light work except she was limited to standing or walking one hour at a time and four hours per day, sitting for six hours in a day, could only occasionally engage in handling or fingering tasks, and could not lift over her head with her left arm. R. at 16. This RFC precluded Plaintiff from returning to her past work, but based on testimony from a vocational expert ("VE") the ALJ found Plaintiff could perform other work in the national economy as a cashier, storage facility rental clerk, or folding machine operator. R. at 20-21.

A.

Plaintiff first argues the ALJ erred in not deferring to the opinions expressed by Dr. Samuel Fadare, whom she describes as a treating physician with respect to her anxiety and depression. To place matters in context: Plaintiff was treated for depression while she was working. Dr. Thomas Scott – who was treating Plaintiff's fibromyalgia and osteoarthritis – noted Plaintiff was seeing a psychiatrist and was prescribed Cymbalta. R. at 363-64. Plaintiff first saw Dr. Fadare in May 2012; during the hearing, Plaintiff testified she switched to Dr. Fadare because she owed her prior psychiatrist a bill that she could not pay, and the psychiatrist would not see her until it was paid. R. at 42.

While the point is not clearly made, it appears Dr. Fadare's predecessor was Dr. Chitra Chinnaswamy. There is a Medication Record from Dr. Chinnaswamy indicating she saw Plaintiff as early as November 2008. R. at 357. However, the earliest treatment note from Dr. Chinnaswamy is from February 2010, and the notes extend to October 2011. The notes primarily reflect Plaintiff had difficulty sleeping and was worried about finances. The note from January 2011 indicates Cymbalta was not decreasing Plaintiff's anxiety, but the Medication Record indicates Dr. Chinnaswamy prescribed different medication after this visit.

In April 2011 – one month before Plaintiff filed her disability claim – Dr. Chinnaswammy wrote that Plaintiff's "mood o.k. however has trouble sleeping through the night. Can't fall asleep/lacking in motivation. Still has fatigue . . . . takes several

2

naps." R. at 355. The remainder of this note is hard to read. The last treatment note (from October 2011) says Plaintiff was "[s]till depressed; says she feels tired + fatigued + unmotivated all the time. Still struggling with pain in all of her joints and it limits her at times. Still going through financial problems." Dr. Chinnaswammy checked boxes indicating Plaintiff's thoughts were coherent and goal directed but that she suffered from fatigue; Dr. Chinnaswammy did not check boxes indicating Plaintiff had difficulty sleeping. She assessed Plaintiff's GAF score at 50 and directed her to return in three months. R. at 399.

Dr. Fadare's notes from the initial visit reflect Plaintiff is depressed and suffers from low self-esteem, but contains nothing else of note. He prescribed Plaintiff medication. R. at 457-58. Dr. Fadare's notes from the second visit in June 2012 reflect only that Plaintiff was having difficulty sleeping; there are no other notes about Plaintiff's condition. R. at 456. Plaintiff's third visit occurred in August 2012; she was still unable to sleep. Dr. Fadare circled some items on the sheet from this visit; with two exceptions the circles all indicate normal findings. The two exceptions are not clear: one is indicating Plaintiff was either anxious or that she exhibited a normal mood; the other is indicating Plaintiff exhibited either an appropriate affect or was incongruent. Both circles seem to focus on the benign options. Plaintiff's medication remained unchanged. R. at 455.

Approximately four weeks later, Plaintiff asked Dr. Fadare to complete paperwork in connection with this disability claim. R. at 454. Dr. Fadare completed a Mental Residual Functional Capacity Assessment Form ("RFC Assessment") indicating Plaintiff suffered from extreme limitations in her ability to sustain a routine without special supervision, make simple work-related decisions, complete a normal workday or workweek without interruption, or work in coordination or proximity with others. The RFC Assessment also indicates Plaintiff is markedly limited in a multitude of areas, including her ability to understand, remember or follow simple or detailed instructions, interact with the public, seek assistance when needed, respond appropriately to workplace changes, set realistic goals, and behave in a socially appropriate manner. The RFC Assessment concludes by suggesting Plaintiff would have to miss more than three days of work per month due to her depression and anxiety. R. at 444-46.

At the same time he completed the RFC Assessment, Dr. Fadare completed a Mental Impairment Evaluation ("MIE") designed to establish that Plaintiff's condition qualified as a listed impairment.  The MIE indicates there is medical documentation demonstrating Plaintiff suffers from continuous or intermittent anhedonia, appetite disturbance with weight change, sleep disturbance, and decreased energy.  The MIE also reflects that Plaintiff has had repeated episodes of decompensation and a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement."  Finally, the MIE indicates Plaintiff exhibits persistent anxiety, "[a] persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity, or situation" and that she suffers from recurrent panic attacks.  R. at 447-50.  Both the RFC Assessment and MIE consist of boxes or other items that are checked or circled; there is no narrative explanation provided, and there are no supporting medical records or other documents.

Generally speaking, a treating physician's opinion is entitled to deference.  This general rule is not ironclad; a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record.  E.g., Anderson v. Astrue, 696 F.3d 790, 793-094 (8th Cir. 2012); Halverson v. Astrue, 600 F.3d 922, 929-30 (8th Cir. 2010).   Plaintiff argues the ALJ erred in discounting Dr. Fadare's RFC Assessment and MIE, contending the ALJ's sole reason – that Dr. Fadare saw Plaintiff on only four occasions – is not a legally acceptable reason.  Given that the treating physician rule is premised in part on the treating doctor's greater familiarity with the patient, e.g., Thomas v. Sullivan, 928 F.2d 255, 259 n.3 (8th Cir. 1991), it seems reasonable for the ALJ to note the sparse nature of that relationship.  Regardless, while it is true that the ALJ noted Dr. Fadare saw Plaintiff on only four occasions, this was not the sole reason the ALJ discounted his opinions.  This observation was made to put the evidence supplied by Dr. Fadare in context and was part of the ALJ's larger observation that Dr. Fadare's "opinion is inconsistent with the medical evidence of record."  R. at 19.  Indeed, the RFC Assessment and MIE are inconsistent with the rather minimal evidence supplied by Dr.

4

Fadare: there are no treatment notes or other records from him that support the extreme limitations he documented in the RFC Assessment and MIE.

There is also no evidence from any of Plaintiff's other treating doctors – including Dr. LaSalle, Dr. Paul, Dr. Scott, and Dr. Chinnaswamy – that would support Dr. Fadare's diagnosis. The ALJ was entitled to conclude that conditions reported in the RFC Assessment and MIE were of the type that would have been noted by all of Plaintiff's doctors, including particularly Dr. Chinnaswamy. The fact they were not justifies not according deference to the Dr. Fadare's RFC Assessment and MIE. The fact that they were not mentioned in Dr. Fadare's contemporaneous treatment notes also justified the ALJ's decision.

B.

Plaintiff next attacks the ALJ's RFC determination. First, she contends it is inconsistent because it begins by stating Plaintiff can perform light work and then imposes restrictions that are contrary to light work. The Court discerns no error. The RFC clearly says Plaintiff can perform the full range of light work with certain enumerated exceptions. In other words, the ALJ acknowledged Plaintiff could not perform the full range of light work and thus required testimony from a VE (which was elicited). This approach is common in disability cases and there is no inconsistency.

Plaintiff also argues there is no "specific bridge between the RFC and the medical evidence which is required by Social Security Ruling 96-8p." Plaintiff's Brief at 22. The Court has examined Social Security Ruling 96-8p but cannot identify the provision that was allegedly violated. As best as the Court can ascertain, Plaintiff's argument is that the RFC is not supported by the evidence. Specifically, Plaintiff contends the ALJ should have included additional limitations based on pain in her upper extremities, carpal tunnel syndrome, degenerative joint disease in her knees, or depression and anxiety. The ALJ found Plaintiff could only occasionally engage in handling or fingering tasks and could not lift over her head with her left arm; Plaintiff does not identify any additional limitations attributed to her upper extremities and carpal tunnel syndrome that the ALJ erred by not including. The ALJ found Plaintiff could not

5

stand for more than one hour at a time or four hours per day; again, Plaintiff does not identify any evidence suggesting the ALJ erred by not including greater limitations attributable to her knees.  Finally, Plaintiff's arguments regarding depression and anxiety depend on the weight to be accorded Dr. Fadare's MIE and RFC Assessment; having held the ALJ was justified in not according them weight (and in light of the holding, below, that the ALJ did not err in finding Plaintiff to be only partially credible), the Court holds there is no error in this regard.

### C.

Plaintiff's final argument is that the ALJ erred in discounting her credibility. Plaintiff concedes the ALJ found her only partially credible because her allegations were inconsistent with the medical evidence in the Record, and there is no denying this is a proper basis for discounting a claimant's credibility.  Plaintiff contends the ALJ erred in failing to "elaborate on what evidence persuaded him she was not credible," Plaintiff's Brief at 26, but the Court believes it is fairly evident from the ALJ's written opinion.  In fact, Plaintiff's summary is incomplete, as it does not account for the entirety of the ALJ discussion (which extended for more than two pages).  R. at 17-19.

At best, Plaintiff contends the ALJ should have weighed the facts differently by attaching more weight to some things and less weight to others.  The Court cannot substitute its judgment of the facts for the ALJ's.  E.g., Baldwin v. Barnhart, 349 F.3d 549, 555 (8th Cir. 2003).  All the Court can do is confirm that the law permits consideration of the factors relied upon, and there is no serious argument to the contrary presented.   There is substantial evidence in the Record as a whole to support the ALJ's decision.

### D.

The Commissioner's final decision is affirmed.
IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: November 21, 2014          UNITED STATES DISTRICT COURT

6

Case 4:13-cv-01247-ODS   Document 13   Filed 11/21/14   Page 6 of 6